Good morning. Good morning. May it please the court, Fred Simpson on behalf of the Defendant and Appellant Government Employees Insurance Company. If I could, I'd like to reserve four minutes of time for rebuttal. A brief procedural note. You can either run your clock down to four minutes or just put ten on, whichever you like. Run it down to four is fine. Okay, go ahead. A procedural note at the outset. There was some discussion in the briefs as to the appropriate standard of review of an order denying a motion to dismiss. Supplemental authority on that point that we've located is Fireman's Fund v. City of Lodi, which says that the review of an order denying a motion to dismiss is de novo. Citation is 302 F. 3rd 928. This is not in your brief? That citation was not in our brief, Your Honor. At the end of argument, if you'll get a slip thing from the Deputy Clerk and give a copy to your opponent. Thank you. After the argument's over. Thank you. We're here because the district court decision in this case is contrary to the public policy of the State of Montana, which is the policy that favors settlements and it favors finality of settlements. And there are two central orders by the district court in this case that we've challenged on the appeal. And we believe the court erred, first, in denying Geico's motion to dismiss, and second, in denying Geico's motion for summary judgment and granting the plaintiff's cross motion for summary judgment. If we believe that the court's analysis of Dempsey v. Allstate was flawed in that it held that the retroactivity of the Hardy case, which was the case that invalidated Montana's anti-sacking statute, applied only to cases that had been litigated and settled, whereas our case had been a claim made by the Hoffmans to Geico, and Geico settled that case initially, or that claim rather, without litigation. Dempsey says that if the matter is not open, if it's not an open, what is it, an open filing, is that what the language says? An open, on open claims, by Geico's likes, was there an open claim in this case? Not at the time that the Hoffmans filed this, because Geico had received a release and had closed its file at the time that the Hoffmans came back and asked for stacked limits of under-insured. And they used the word settlement earlier and used the word release now. So what is it? Was this a settlement or was this a release? It was a settlement with a release. And is that standard procedure? Because it appears, at least according to what Geico thought at the time, with the anti-stacking statute, that Geico had paid in full everything that was owed that it could possibly owe. So why would it even need a settlement? What was settled, what was compromised here if Geico paid full dollar? According to the release, any additional liability that Geico may have had under the policy was compromised. The release language includes any additional claims arising out of. . . And is that standard procedure when you pay the full policy amount? Your Honor, I don't believe that proof's in the record, but that's my understanding. But is this sort of a semantic thing as to whether it's a settlement or a release? It's one piece of paper with a big release, isn't it? That's correct. And it's the payment of the money and Geico's decision not to contest the damages that Kenneth Hoffman suffered at the time that it paid the money and in return obtained the release as part of the settlement from Mrs. Hoffman as Kenneth's guardian. So the district court applied a rule or an interpretation of Dempsey that the Montana Supreme Court meant that only to apply to cases, litigated cases, instead of open claims, settled, closed claims without litigation. If the district court's analysis of Dempsey is correct, then we've got an anomalous result where the insurer who decides to pay a claim and settle a claim early without forcing an insurer into litigation is subject to potential for stacked UIM coverage later, whereas the insurer that decides to force the insured to litigate a claim and then settle the claim partway through the litigation is protected from this kind of liability. That's an anomalous result, and we believe that the district court's decision on that was flawed. The other important issue is that the release in this case was valid, regardless of whether there was consideration or not. We do believe that there was consideration in the form first of the payment of the $100,000. It was obligated to do that, wasn't it? Well, it was not obligated to necessarily pay the $100,000 because at the time that the money was paid in July of 2001, there had been no determination as to the extent of Kenneth Hoffman's damages. The proof in the record is that at that point in time, Kenneth had incurred $200,000 in medical bills. There was not evidence of other hard damages or special damages that Kenneth had suffered. But there was damage. It paid $100,000. It paid $100,000, but there was $300,000 from the liability policy covering the tortfeasor's vehicle. There was another $70,000 that became available of liability coverage. So there was $370,000 in underlying liability coverage that was ultimately paid to the Hoffmans. This was on top of that. This was underinsured motorist coverage, which was effectively excess over the top of the liability coverage. So it's our position that that only went to compensate Kenneth for general damages. Didn't you admit in your answer and in responses, sworn responses to interrogatories, that his damages would encompass all of that and the additional $200,000 if these policies were not stacked? We admitted that. Not that those damages had necessarily been liquidated or determined at the time the release was given, but for the purpose of proceeding and expediting the resolution of the underlying lawsuit, the client made the decision that we want to focus on the central issue of the release and whether we can go back and retroactively stack, as opposed to fighting how much damage Kenneth had ultimately sustained. Whatever the reasons were for doing so, at two important stages of the litigation, Geico admitted that Kenneth Hoffman's damages went well over what had been paid by the tortfeasor, and if not stacked, that he would be able to recover the additional $200,000. Right. But if the court is concerned that Geico then had a preexisting duty to pay that and that there was no consideration, we directed the district court to the Montana Code Section 28-1-1601 that says a release given in writing doesn't need to be supported by new consideration. The district court said that that applies basically in the debtor-creditor circumstance. It was not meant to cover a situation such as this. Is that what the district court said? That's effectively what the district court said. What's your response to that? Our response to that is first that the district court's obligation in construing and applying statutes under the Montana Code requires the court simply to declare what is in the statute, not to omit what has been inserted in the statute, and not to insert what has been omitted. The district court effectively inserted language that this statute applies except in cases between insureds and insurers. The plain language of the statute discusses debtors and creditors. The definitions of debtors and creditors squarely fit the circumstances of this case. The Hoffmans claimed that Geico owed them money. Under the code sections, and we've cited these and quoted these in our brief, Hoffmans clearly fall within the category of creditors. Geico falls within the category of a debtor. So if I'm insured under an automobile policy and I feel I've suffered damages, I'm a creditor? If you're making the claim that Geico owes you money. An insurance company is a debtor? Correct. What's your client's position regarding the possibility of sending this issue on certification to the Montana Supreme Court? I don't think we need to do that because I think the case law and the statute are clear. The court overlooks the case of Westfall v. Motors Insurance Company that we cited. When was that decided? It was decided in 1962 by the Montana Supreme Court. In that case, it was a claim by an insured against the insurer, claiming that the insurer had improperly obtained a release under fraudulent circumstances. The insured sued the insurer. The insurer raised the defense of release in the trial court. The trial court refused to instruct on the defense of release. The trial resulted in a verdict for the insured, which was appealed and the Montana Supreme Court quoted this very statute that we're relying on and then went on to discuss the trial court error in failing to instruct the jury on the law of release. There is, in fact, no authority from the Montana Supreme Court since that time which overrules or questions the Westfall v. Motors case in any regard. Finally, I'd like to note there is a case pending before this court, Reardon v. State Farm. It raises a similar issue on the recovery of attorney's fees. I can get the case number for your clerk at the conclusion of the argument. With that, sit down. Isn't there one way to read Westfall that the Montana Supreme Court in that 45, 46-year-old decision was simply saying that releases ought to be treated like any other contract? That's what they're saying. That's why I think you can still follow that reasoning through the case law from the Montana Supreme Court today. They still treat a release like any other contract. I think the code section that talks about a release, 28-1-1601, should be equally applicable to this situation between an insured and an insurer. The difference is you can treat it as a contract, but you don't necessarily classify the claimant as a creditor. I mean, that's the distinction, right? The court held that because of the fiduciary nature of the relationship between the insurer and the insured, the court felt that the Montana Supreme Court would, therefore, not find that a debtor-creditor relationship existed between the parties. And did that come about in Montana, this sort of definition of the relationship between the insurer and the insured? Did that come about after 1962 in the Montana Supreme Court? It evolved in the case law after that point in time. Thank you.  You've got some time for rebuttal. Thank you. Thank you for your argument. Well done. Counsel? Good morning, Your Honors. Chris Freunas for the appellee, Donna and Kenneth Hoffman. Before I address Mr. Simpson's remarks, I'd like to just give you a brief history of stacking in Montana. It has been the law in Montana that stacking is available to its insured since Sullivan and Doe in 1972. They have continued to support stacking in Bennett v. State Farm in 1993, and have supported stacking for the insured all along until 1997 when the legislature instituted the anti-stacking statute. That was overturned in Hardy in April 2003 and followed by the Dempsey decision, which affirmed that Hardy is retroactive. Dempsey's got some pretty interesting language. I wouldn't say that it seems a little overbroad to say that Dempsey makes it retroactive because it says that it applies on open claims, but in the interest of finality, we limit retroactivity to cases pending on direct review or not yet final. Your client didn't have a case. He did not have a case pending on direct review or not yet final. So then our position would be that it does apply retroactively. No, I said we limit this retroactivity to cases pending on direct review or not yet final. Or cases that have not yet appeared. If you read Judge Lynch's analysis of Dempsey, he goes into a great in-depth analysis about how the finality issue comes from criminal courts. It's a very good analysis of that Dempsey decision. But also, in this case, we brought a claim to set aside the release and also to stack. So they can be viewed separately, and because they're kind of lumped together, it's a little bit difficult. But what we brought here is, and Judge Malloy says this, too, in his opinion, as well as Judge Lynch. We could have brought an action just to set aside the release, and if the release was invalid, we could make a claim against that UIM policy because contract claims are valid. Statute of limitations is eight years. So let's assume that we just did that. We still wouldn't have a case, but we would have a valid contract claim against GEICO for those two stacked policy limits. And they chose not to dispute the amount of damages from my clients because they knew that my clients' injuries were significant. So correct me if I'm wrong. I hear you saying that when the Montana Supreme Court talked about retroactivity in this context, they were talking about cases that were over and done with. Yes. And they made an exception for those that were not final. Actually, what they said was the way it is interpreted, the only cases that this does not apply retroactively to are ones that have judicial finality, cases that have been decided by a judge or jury. Everything else is open. How far back does that go? Is there any limiting principle? Well, sure there is because there are statutes of limitations. What's the statute of limitations? On contracts, it's eight years for first party. You could go back to cases that had been over and done with since 1996 and reopen those? That would predate the legislative action in 1997. Well, see, in 1996, stacking was allowed, so that wouldn't be... But you go back to 1997 effectively. You could reopen cases that had been over and done with for seven years. The other effect, Your Honor, would be that these people that were injured in this small window between 1997 and 2003 did not receive the same benefits as all those people before and all the people after them. So that's the real anomalous result is that that small window of people would be excluded from receiving the benefits of the premiums that they paid. Let's talk about your client. When was your lawsuit filed? 2005, I believe. 2006. Okay. In 2006. So prior to that, there had been a release signed, correct? There was a release signed. And the money paid out. The $100,000 paid out. Yes. But there was no case. There was no case. There was no claim. So there's nothing to apply retroactivity to because there's no case, right? No. It's a claim. They have a right. Right. The right to make a claim. So you're arguing about all these 19-2006 and windows and all that. That doesn't really relate to your client, though, because you don't file your lawsuit until 2006. That's right. That's right. We just had a contract. At that point, you say the release is invalid. Yes. Okay. You now have a pending case. We have a contract. You have a contract. You have a pending case. So how does retroactivity even figure in? It doesn't. Okay. It doesn't make any difference because once the release was set aside, retroactivity is moot. Other than the court has said that the Dempsey or that the Hardy case applies, that the anti-stacking statute was void ab initio, and therefore it had no effect during this time that my client was injured. I also wanted to point out in the Westfall case that Mr. Simpson cited, Westfall was a third-party case. And it was also not a policy limits case. And in Montana, when you pay, when you have a policy limits case, the insurer will pay the injured party without a release. That is the common practice as I know it. There's no requirement for a release because the essential elements of the contract are the insured pays his premiums, the insurance promises to pay him if he gets injured, and then they pay him. And they're not entitled to anything else. So why isn't this a simple case of accord and satisfaction then? Why hasn't GEICO simply paid everything that was owed under the contract in 2001? So the release is irrelevant. It's a release of nothing. They paid you everything that was owed under the contract. But they weren't even entitled to the release. Because the release, as they argue, bars my client from collecting the additional $200,000 that they are owed, and it is undisputed in the amount of damages they have stipulated and they have admitted in their complaint and in discovery responses that my client at the time. Their answer. In their answer. Yes, thank you. That they, at that time, my client's injuries exceeded all the insurance put together, including the $200,000 that we are trying to get from the two additional insured vehicles. So they admitted that, and at this point we, you know, my client's entitled to that without, because the release just gets in the way. What would GEICO have had to have done in 2001 when your client signed the release in order to have provided consideration? What would have constituted consideration in that circumstance? If they paid one additional dollar? You know, I guess the adequacy of consideration is, I don't know. There would have been no need for it other than I believe that GEICO probably knew what was coming on the horizon because Montana Supreme Court has always supported stacking. And so they knew that it was in the wind, that it was going to get overturned. They wanted that release. What if they had included a paragraph? It's obviously a hypothetical question. If they had included a paragraph that said something like, this release extends to any claim stacking of other policies owned by this or these people are named insurers. In other words, made specific reference to a potential stacking claim. Would we have a different situation? It would certainly be a different situation, but I think then that release would have to be overturned as unconscionable, which the lower court never got to in this issue because they determined this on lack of consideration. But here we have an unrepresented woman with a brain injured son. GEICO is taking advantage of them. They have a fiduciary duty to their first party insured to treat them fairly. And they didn't do that. Okay. All right. Thank you. Thank you for your argument. Rebuttal? Thank you. I'd like to address the last point that counsel raised first. There is no evidence in the record, and the district court's decision was not founded on any fact that suggested GEICO took unfair advantage of Mrs. Hoffman. In fact, in our motion in support of summary judgment and the factual information we offered in support of that motion, we demonstrated to the court that Mrs. Hoffman knew that she was able to hire an attorney. In fact, she hired an attorney to assist with her claim against Safeco and her claim against St. Paul, which were the liability insurers. We also pointed out to the court that she had been appointed by a state district court as Kenneth's guardian, so she was obviously competent to watch out for Kenneth's affairs. But she was unrepresented at the time the release was executed. She was not represented by counsel with respect to this claim. That's correct. But there is no finding by the district court that GEICO took unfair advantage of her, so I want the record to be clear on that. If the Dempsey case is to have any meaning, it has to mean that Hardy doesn't apply retroactively to settled claims. This was a settled claim. There was no other way for GEICO or any other insurer to settle a claim at the time this occurred. But let's suppose that we agreed with you on the extent of Dempsey. You still have to contend with the idea that the settlement was void of an issue, don't you? Otherwise, you've got an existing contract and an eight-year statute of limitations. Then Dempsey has no meaning under that circumstance. I don't agree with that because regardless of whether GEICO took a release, this was a settled claim. It had paid everything that it owed under the policy at that point in time. The release is frankly irrelevant for the argument that we raised under Dempsey because otherwise the only situation where the entire discussion in Dempsey could apply is in a situation where there's an actual lawsuit, a claim's been filed, and it's later been settled and dismissed with prejudice. That's contrary to the public policy of the state of Montana, which says we promote settlement of claims and we promote finality to settlements. If the Dempsey case has any meaning, I think it has to mean that a settled case like this one can't be reopened. Finally, I'd like to point out it's our position that it's inappropriate to analogize the retroactivity analysis to criminal cases as the district court did here because those cases obviously are not settled in private as are most insurance claims. I just want to go back on one thing. You said a settled case can never be reopened. But that's not really true because any time you sign an agreement, whether it's a settlement agreement or a release, a standalone, you have a new contract, correct, between the insured and the insured? Sure. And there's a statute of limitations, and if you want to challenge that, let's say for coercion or for some other void against public policy, nothing would preclude you from filing suit on that. You might not win, but it's not precluded to go back and challenge, correct? I agree. It's not precluded to go back and challenge the release. But at the time that GEICO paid its money to Mrs. Hoffman in this case, it didn't have any duty under Montana law to pay her any additional money. It was, in effect, a settled claim. And the Dempsey analysis, if we apply it correctly, has to mean that we don't go back and reopen those claims where a limit's been paid already. Okay. Thank you. All right. Thank you for your argument. And you'll provide the deputy clerk with the two citations. And, counsel, if you'd like to respond to those citations, a three-page letter brief to the court. Just a letter if you want to respond. You don't have to. And you'll get a copy of the thing that he leaves with the clerk. Okay. Case just argued will be submitted for decision.
judges: Hawkins, McKeown, Bybee